IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


MELANIE A. GRUBBS                                                                                    PLAINTIFF

      V.                              CIVIL NO. 2:14-cv-02236-MEF

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                       DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Melanie A. Grubbs, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.  Procedural Background**

Plaintiff protectively filed her applications for DIB and SSI on February 16, 2012, alleging disability since August 23, 2010 due to "missing 3 fingers left hand/lawn mower accident, mental, HBP, back, shoulders, neck, carpel tunnel both hands limited use left hand." (T. 118-124, 125-130, 153) Her applications were denied initially on March 14, 2012, and upon reconsideration on May 11, 2012 and October 2, 2012. (T. 60-62, 63-66, 67-69, 72-73) Plaintiff requested an administrative

hearing (T. 76-77), and the hearing was held on May 2, 2013, before the Hon. Clifford Shilling, Administrative Law Judge (ALJ). (T. 23-55) Plaintiff was present and represented by her attorney, Michael Hamby. (T. 23, 25)

Plaintiff was 51 years old at the time of the hearing. (T. 29) She had obtained a high school diploma, and she had taken some secretarial classes. (T. 29) She had past relevant work ("PRW") as a fishing lure painter, a hospital cleaner, and as a home care attendant. (T. 51) Plaintiff stopped working on March 31, 2010, when her temporary job with the Census Bureau ended, and she felt her condition became severe enough to prevent her from working on August 23, 2010. (T. 153)

By a written Decision dated August 16, 2013, the ALJ found Plaintiff had the following severe impairments: residuals from left hand injury, obesity, degenerative disc disease, anxiety disorder, and major depressive disorder. (T. 10-11) After reviewing all of the evidence presented, the ALJ determined Plaintiff's severe impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments. (T. 11-12) The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, except: she can frequently handle, but only occasionally finger with her left hand; she could perform work where interpersonal contact is incidental to the work performed; complexity of tasks is learned and performed by rote, few variables, and little judgment; and, supervision required is simple, direct, and concrete. (T. 12-15)

The ALJ found that Plaintiff is unable to perform any PRW. (T. 15) With the help of a vocational expert ("VE"), and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 16) Specifically, the VE testified that Plaintiff could perform the duties of a housekeeper (DOT 323.687-014; light, unskilled; 130,500 nationally/1,200 Arkansas), and as a

machine tender (DOT 556.685-022; light, unskilled; 296,000 nationally/3,700 Arkansas). (T. 52) The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (T. 17)

Plaintiff requested a review of the hearing decision by the Appeals Council (T. 4), which request was denied on September 22, 2014 (T. 1-3). Plaintiff then filed this action on November 6, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 5) Both parties have filed appeal briefs (Docs. 12, 13), and the case is ready for decision.

## II.  Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him

from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

While not specifically articulated, Plaintiff essentially argues on appeal that substantial evidence does not support the ALJ's RFC assessment. (Doc. 12, pp. 2-4)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

RFC is the most a person can do despite that person's limitations, and it is assessed using all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). A claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect his RFC. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

### A.  No Additional Mental RFC Limitations Are Supported By The Evidence

Plaintiff argues that she has been diagnosed with major depressive disorder, obsessive compulsive disorder, anxiety disorder, sleep disorder, and dysthymic disorder, and that she has continually suffered and complained of mental health symptoms for at least the past ten (10) years. (Doc. 12, p. 2) A mere diagnosis, however, is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Buckner v. Astrue*, 646 F.3d 549, 556-557 (8th Cir. 2011) (although the claimant was diagnosed with depression and anxiety, substantial evidence supported the ALJ's finding that depression and anxiety were not severe). Further, the record shows Plaintiff continued to work during much of that time. (T. 134-136) Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005); *Gowell v. Apfel,* 242 F.3d 793, 798 (8th Cir. 2001) (claimant worked with her impairments for years).

Here, while Plaintiff has a lengthy history of treatment for depression and anxiety, her conditions have been well managed with counseling and medications. Numerous medical reports reflect this. On November 9, 2009, she reported to WACG that she had been doing fine on Zoloft, that "[t]hings are falling into place and this is the happiest she has been as an adult, feels content." (T. 300) On January 25, 2010, she reported being more at peace with herself, more confident, getting out more, that she had been working part-time at a neighbor's farm feeding, cleaning stalls, cleaning house, and that she was working with Arkansas Vocational Rehabilitation to "get a plan going." (T. 306) *See Wiseman v. Sullivan*, 905 F.2d 1153, 1156 (8th Cir. 1990) (search for work and finding part-time employment is inconsistent with disability). On April 15, 2010, she described not being as depressed, having a much better attitude, and she felt her medications were effective. (T. 307) On May 3, 2010, she was doing fine and wasn't feeling depressed. (T. 321) On July 26, 2010, she noted her depression to be a 1 on a 1 to 10 scale, and she was doing well on her medications. (T. 323) On September 27, 2010, it was noted that "she appears to be stable without side effect." (T. 325) On August 29, 2011, she advised that she had discontinued taking Zoloft and did not want to try anything else, that Ativan and Seroguel were effective for her anxiety and sleep disorder, and "she appears to be stable." (T. 333) On November 14, 2011, she had remained off of Zoloft and was doing fine; she reported thinking more clearly and having more energy; the Ativan and Seroquel remained effective; and, she denied any symptoms or side effects. (T. 335) During a visit to Dr. Shawn Miller on January 20, 2012, it was noted, "[s]he sees WACG for 'some type of mild depression' and is doing OK on her current medication." (T. 280) On February 3, 2012, she informed WACG that she was doing fair, had thought about working part-time, but was having trouble getting motivated to go get a job. (T. 321) *See Pearsall v. Massanari*, 274 F.3d at 1218 (holding that a lack of work

history may indicate a lack of motivation to work rather than a lack of ability). She noted situational and environmental stressors during a visit to WACG on February 13, 2012, but she did not want to go back on an anti-depressant medication, and her mental assessments were noted to be essentially normal. (T. 337)

Plaintiff points to her visit to WACG on April 15, 2013 (just three weeks before her administrative hearing on May 3, 2013) during which she complained of "depression that interferes with her functioning," "that "she feels too depressed to work," and that the "medications make it difficult for her to get up in the morning." (T. 411) Her mental status exam on that date, however, reflected normal behavior (although with some moderate distress/tearfulness), a calm mood, appropriate affect, logical and coherent thought processes, normal attention and concentration, full orientation, intact memory, and fair judgment and insight. Continuation of Plaintiff's conservative care through counseling and medication management was recommended, and it was noted that Plaintiff "is at a maintenance level of care." (T. 411-413) Notably, none of Plaintiff's mental health providers have never restricted her from work related activities due to any of her mental impairments.

If an impairment can be controlled through conservative treatment or medication, it cannot be considered disabling. *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). In this case, the ALJ found Plaintiff's history of conservative treatment to be inconsistent with her allegations of disabling mental health symptoms. (T. 14-15) The Court agrees.

Moreover, it is apparent from Plaintiff's medical records that her mental health symptoms arose from situational stressors, including an alcoholic boyfriend and concerns about the onset of menopause. (T. 281, 284, 294, 296, 304, 308, 309, 310, 327, 329, 333, 337, 414) *See Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) (situational depression was not disabling).

The opinion evidence also supports the ALJ's RFC determination regarding Plaintiff's mental limitations. A mental RFC assessment on March 13, 2012 by Brad F. Williams, Ph.D. reflected that Plaintiff is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work, complexity of tasks is learned and performed by rote, few variables, little judgment, and where supervision required is simple, direct, and concrete. (T. 374) Dr. Williams' opinion was affirmed by Kay Cogbill, M.D. on August 23, 2012. (T. 402) Upon examination on August 2, 2012, a consultative psychologist, Patricia J. Walz, Ph.D., found that Plaintiff's mental impairments only minimally interfered with her day to day adaptive functioning; her capacity to communicate and interact in a socially adequate manner was fair; she had the capacity to communicate in an intelligible and effective manner; her intellectual functioning was thought to be in the low average to average range; her ability to attend and sustain concentration on basic tasks was fair; she persisted well; and, her speed of information processing was average. (T. 399-400) This is consistent with the opinions of Gina Miesner, MS, LPE-I, of WACG, who on March 6, 2012, concluded that Plaintiff "is capable of being around other people and has appropriate social skills," and that "[s]he can complete simple routine tasks." (T. 294)

Considering the evidence of record as a whole, the Court finds substantial evidence in support of the mental limitations set forth by the ALJ in his RFC determination.

### B. No Additional Physical RFC Limitations Are Supported By The Evidence

Plaintiff also argues that the ALJ did not properly account for her physical limitations in his RFC assessment. She points to degenerative disc disease in her back, carpal tunnel syndrome, and the partial amputation of three fingers on her left hand. (Doc. 12, p. 3) Other than reference to one office visit on October 29, 2010, Plaintiff cites no medical evidence to support her contention that additional physical limitations should have been included in her RFC. The one office note she mentions reflects that her wounds from the lawnmower accident had healed; that while she had "profoundly limited" range of motion in her left index finger (which was relatively unscathed in the accident), she was encouraged by the doctor to actively and passively move the index finger; and, she said she would try. (T. 257) Dr. Henley did not impose any restrictions on Plaintiff's use of her left hand. On November 19, 2010, Plaintiff related to her psychologist that while she was upset over not getting hand therapy because of a lack of insurance, she had been doing some exercises to strengthen her grip and flexibility. (T. 308) At no point thereafter did she complain to any of her physicians that she was continuing to experience stiffness or decreased range of motion or function in her left index finger. The failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (holding failure to seek medical treatment may be inconsistent with a finding of disability).

Regarding her assertion of additional limitations associated with degenerative disc disease in her back and carpal tunnel syndrome, there is simply no medical evidence of record showing that Plaintiff was suffering any symptoms or obtaining any treatment for these alleged impairments. In her initial visit with her primary care provider on February 2, 2009, Plaintiff made no mention of any

symptoms of degenerative disc disease in her back or carpal tunnel syndrome. (T. 286-287) In fact, there is only one occasion, on September 14, 2009, when Plaintiff gives a history of "headaches and neck pain and hip pain" that "responded well to chiropractic treatment in the past" (T. 285), but there are no treatment records whatsoever to verify diagnosis and treatment of these alleged impairments. "While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." *Shannon v. Chater*, 54 F.3d at 486. During her hospital visit in August, 2010, no past medical history of any degenerative disc disease in her back or carpal tunnel syndrome was given by Plaintiff, and a thorough physical examination showed that Plaintiff's neck and back were normal. (T. 241-242) Thus, there was substantial evidence for the ALJ to doubt Plaintiff's complaints of disabling symptoms from degenerative disc disease of the back and carpal tunnel syndrome considering Plaintiff failed to seek substantive treatment for these alleged conditions. *See Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (upholding ALJ's consideration of claimant's failure to seek medical attention where claimant's measures to relieve pain were not indicative of severe, disabling pain).

   As for opinion evidence, the ALJ considered and gave great weight to the opinions of State agency medical consultants who, upon a review of Plaintiff's medical records, concluded that Plaintiff has the RFC to perform light work, except that she should only occasionally finger with her left hand. (T. 15, 350-357, 395)

   The ALJ also considered Plaintiff's activities of daily living, including light housework, laundry, mowing, caring for two children and a disabled roommate, preparing meals, driving a car, traveling independently, shopping in stores bi-weekly for four hours, reading, watching television, going to church, and fishing. (T. 15, 172-176) The ALJ correctly found that Plaintiff's activities of

daily living supported his RFC assessment that Plaintiff could perform light, unskilled work. *See Lackenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007) (in evaluating RFC, consideration should be given to the quality of claimant's daily activities, the ability to sustain activities, and the frequency, appropriateness, and independence of activities).

The ALJ considered and discussed the evidence of record as a whole, including treatment records, consultative examinations, State agency reviewing physician opinions, and Plaintiff's reported activities of daily living in reaching his RFC finding. The ALJ properly accounted for any limitations supported by the evidence by restricting Plaintiff to light work, except only occasional fingering with her left hand; where interpersonal contact is incidental to the work performed; complexity of tasks is learned and performed by rote, few variables, and little judgment; and, supervision required is simple, direct, and concrete. Plaintiff has failed to meet her burden of showing greater mental or physical restrictions. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (claimant has burden of establishing RFC). Accordingly, substantial evidence supports the ALJ's RFC finding.

**IV. Conclusion**

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB and SSI benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 9th day of December, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE